UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

CONTINENTAL CASUALTY COMPANY
AND VALLEY FORGE INSURANCE
COMPANY,

      Plaintiffs,

v.

WINDER LABORATORIES, LLC,
STEVEN PRESSMAN, AND
CONCORDIA PHARMACEUTICALS, S.A.R.L.

      Defendants.
_____/

CASE NO.:
2:19-CV-00016-RWS

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR REIMBURSEMENT

Plaintiffs Continental Casualty Company ("CCC") and Valley Forge Insurance Company ("VFI") (collectively, the "Insurers") hereby submit this Memorandum of Law in Support of their Motion for Reimbursement of defense fees and costs incurred on behalf of Winder Laboratories, LLC and Steven Pressman (collectively, "Winder") in defense of the underlying lawsuit, *Concordia v. Winder, et al.,* Civ. Action 2:16-cv-4-RWS, N.D. Ga. (the "Underlying Lawsuit").

## I.      Introduction.

The Insurers do not wish to bring this Motion, but have been forced to do so by Winder's refusal to even entertain settlement of the Insurer's reimbursement claims. Specifically, since this Court's Orders granting the Insurers' Motion for Judgment on the Pleadings and denying Winder's Motion for Reconsideration, the Insurers have repeatedly reached out to counsel for Winder to resolve the reimbursement issue with Winder through settlement. However, Winder has refused to engage in any settlement discussions or even mediation. (*See* Exhibit A, E-Mails with Winder's counsel).

The Insurers are entitled to reimbursement of all of the defense costs that have been incurred in the Underlying Lawsuit. When the Insurers agreed to defend Winder in the Underlying Lawsuit subject to a reservation of rights, they timely and explicitly reserved their right to recoup defense costs, and provided specific and adequate notice of the possibility of reimbursement. Now that this Court has found that the Insurers do not owe a duty to defend the Underlying Lawsuit, the Insurers are entitled to reimbursement. *See Ill. Union Ins. Co. v. NRI Constr., Inc.*, 846 F. Supp. 2d 1366, 1374 (N.D. Ga. 2012).

The Underlying Lawsuit has never triggered the duty to defend, or, at a minimum, it has not done so since the Court's March 15, 2017 Order on Winder's

Motion to Dismiss the First Amended Complaint (the "2017 Motion to Dismiss Order") or the Court's September 28, 2018 Order on Winder's Motion to Dismiss the Third Amended Complaint in the Underlying Lawsuit (the "2018 Motion to Dismiss Order") (collectively, the "Motion to Dismiss Orders").  Winder has been unjustly enriched by racking up enormous legal fees for a lawsuit that was never covered.  And now, Winder refuses to entertain settlement discussions in spite of the Court's instruction that it do so when granting the Insurers' Motion for Judgment on the Pleadings and denying Winder's Motion for Reconsideration.  The Insurers, therefore, are left with no choice but to bring this Motion.

## II. This Court's Precedent Mandates Reimbursement.

The Insurers' claim for reimbursement is sanctioned by law.  The Northern District of Georgia has adopted the majority view nationwide that an insurer is entitled to reimbursement when it assumes the defense of its insured under a reservation of rights, and subsequently receives a judicial determination of no coverage.  *Ill. Union Ins. Co.*, 846 F. Supp. 2d at 1377.  To properly reserve the right to reimbursement, the insurer must (1) timely and explicitly reserve its right to recoup the costs; and (2) provide specific and adequate notice of the possibility of reimbursement.  *Id.* at 1377.

In *Illinois Union,* the insurer won a declaratory judgment that it did not owe a duty to defend its insured in an underlying lawsuit, which the insurer was defending under a reservation of rights. *Id*. at 1372. This Court held that the insurer was entitled to reimbursement of the fees and costs that it had incurred defending the action to date, as the insurer had provided specific and adequate notice that it was reserving its rights to seek reimbursement. *Id*. at 1377. In reaching this decision, the Court analyzed case law around the country, and predicted that Georgia would adopt the majority rule that an insurer is entitled to reimbursement of defense costs if it timely and explicitly reserves its right to reimbursement and provides specific and adequate notice of the possibility of the same, absent specific objection to the reservation by the insured. *Id*. The Court reasoned that "right of reimbursement is justified under either an unjust enrichment or implied in fact contract theory," noting that "Georgia courts have held that by not objecting to a timely and proper reservation of rights and allowing an insurer to provide its defense, an insured is deemed to have consented to the letter's terms." *Id.*[1]

---

[1] Notably, the only case law distinguishing *Illinois Union* involve situations where the insurers did not specifically reserve their rights to recoup defense costs. *See, e.g.*, *Transportation Ins. Co. v. Freedom Electronics, Inc.*, 264 F. Supp. 2d 1214, 1221 (N.D. Ga. 2003); *Evanston Ins. Co. v. Sandersville Railroad Co.*, 2017 WL 3166730, (M.D. Ga. July 25, 2017); *Essex Ins. Co. v. Sega Ventures, LLC*, 2015

This is consistent with the majority rule nationwide, where courts almost uniformly recognize that an insurer is entitled to seek reimbursement of defense costs that it did not owe if it properly reserved the right to do so. *See, e.g.*, *Sec. Ins. Co. of Hartford v. Lumbermens Mut. Cas. Co.*, 826 A.2d 107, 125 (Conn. 2003) ("Where the insurer defends the insured against an action that includes claims not even potentially covered by the insurance policy, a court will order reimbursement for the cost of defending the uncovered claims in order to prevent the insured from receiving a windfall."); *Colony Ins. Co. v. G & E Tires & Service, Inc.*, 777 So. 2d 1034, 1038–39 (Fla. 1st DCA 2000) (reimbursement allowed where the insurer had "timely and expressly reserved the right to seek reimbursement of the costs"); *United Nat. Ins. Co. v. SST Fitness Corp.*, 309 F.3d 914, 920 (6th Cir. 2002) (predicting Ohio would allow recoupment where there is no duty to defend if the insurer "1) timely and explicitly reserve(s) its right to recoup the costs; and 2) provide[s] specific and adequate notice of the possibility of reimbursement" and insured fails to object); *Cincinnati Ins. Co. v. Grand Pointe, LLC*, 501 F. Supp. 2d 1145, 1168 (E.D. Tenn. 2007) (predicting Tennessee law would permit reimbursement for defense costs if insurer reserves its right to recoupment and it is later determined that insurer had no duty to defend); *Resure, Inc. v. Chemical*

WL 1505979, (N.D. Ga. Mar. 31, 2015). Such authority is inapplicable here, where the Insurers expressly and timely reserved their right to reimbursement.

5

*Distributors, Inc.*, 927 F. Supp. 190 (M.D. La. 1996), *aff'd*, 114 F.3d 1184 (5th Cir. 1997) (insurer was entitled to reimbursement for all costs of defense where it timely and specifically reserved the right to seek reimbursement and insured did not object to the reservation).

### III. The Insurers reserved their right to seek reimbursement from the outset, and repeated that reservation on multiple occasions.

The Insurers properly reserved their rights to recoup defense fees and costs, consistent with *Illinois Union*. Specifically, the Insurers issued reservation of rights letters to Winder on February 19, 2016, April 17, 2017, December 13, 2017, and July 31, 2018, which expressly reserved the right to seek reimbursement of defense fees and costs incurred on behalf of Winder in the Underlying Lawsuit. (Doc 1-8, Ex. H to Compl., Insurers' reservation of rights ltrs.). Winder never objected to any of these reservations, and accepted the defense provided under the reservations of rights. (*See* Exhibit B, Signed acknowledgement by Winder of defense under a reservation of rights).

Specifically, in its February 19, 2016, reservation of rights letter in connection with the original Complaint, VFI stated: "VFI specifically reserves its right to seek reimbursement of defense costs incurred on your or Winder's behalf for all claims which are not potentially covered by the VFI Policy." (Doc 1-8 at 3).

In its April 17, 2017, reservation of rights letter in connection with the First Amended Complaint, VFI incorporated this reservation from its February 19, 2016 reservation of rights letter. (Doc 1-8 at 17–18). In its December 13, 2017 reservation of rights letter in connection with the Second Amended Complaint, VFI continued to incorporate its prior reservation of rights letters by reference and again expressly stated that the Insures "reserve their rights to disclaim coverage and seek reimbursement of legal fees and costs." (Doc 1-8 at 22). Thereafter, in its July 31, 2018, reservation of rights letter in connection with the Third Amended Complaint, VFI stated, in pertinent part, as follows:

> As set forth in the February 19, 2016, April 17, 2017 and December 13, 2017 reservation of rights letters, which are incorporated herein by reference as though set forth in full, the CNA Insurers reserve their rights to disclaim coverage and seek reimbursement of legal fees and costs.

(Doc 1-8 at 27). VFI also expressly advised Winder in a letter dated July 2, 2018, that it had no duty to fund or pay for Winder's legal fees and other expenses allegedly incurred by Winder to prosecute Winder's affirmative counterclaims against Concordia in the Underlying Lawsuit. (*See* Exhibit C, July 2, 2018 Ltr. from VFI to Winder).

Winder accepted the defense of the Underlying Lawsuit offered in the reservation of rights letters, and did not object to the Insurers' reservation of the

right to seek reimbursement of defense fees and costs that the Insurers incurred on behalf of Winder in the Underlying Lawsuit. (*See* Ex. B).  Instead, as detailed below, Winder incurred extravagant costs in the Underlying Lawsuit, only some of which related to its defense, and all of which it billed to the Insurers.

## IV. The Insurers never had any duty to defend Winder in the Underlying Lawsuit.

The Underlying Lawsuit has never triggered the Insurers' duty to defend. Instead, from the beginning, the Underlying Lawsuit has been about the failure of Winder's products to conform to the statements of quality.  Indeed, Winder has even acknowledged as much.  In its Motion for Reconsideration, Winder confirmed that "the allegations supporting Concordia's contributory false-advertising claim in the underlying case have not changed since Concordia first filed the case in 2016." (Doc. 57, Winder's Mot. Reconsideration at 12).  As this Court held in its June 27, 2020, Order on the Motion for Judgment on the Pleadings (Doc. 54) (the "Order"), such allegations are expressly excluded from coverage under the Failure to Conform Exclusion in the policies that the Insurers issued to Winder (the "Policies").

In its Order, the Court particularly analyzed the Fourth Amended Complaint ("FAC"), which it noted is functionally identical to the Third Amended Complaint ("TAC"), in finding that the Insurers do not have a duty to defend the Underlying

8

Lawsuit. (*See* Doc. 54 at 3 n.1 ("[T]he now operative complaint is the FAC, which is materially similar to the TAC.")). Iterations of the underlying Complaints prior to the TAC were not briefed at the parties' Motion for Judgment on the Pleadings, and the Court did not rule on the Insurers' duty to defend those iterations of the Complaint in the Order. But this Court did note that "prior claims, which have now been dismissed in the underlying suit, appear to have brought earlier complaints within coverage." (Doc. 54 at 9–10).

A closer examination of the pleadings, however, demonstrates that none of the earlier complaints were covered by the Policies. The Court's comment regarding previously dismissed claims appears to relate to allegations in the Underlying Lawsuit that Winder copied Concordia's labels for Donnatal. (Doc. 54 at 7 (citing to FAC, Case No. 2:16-cv-4, Doc. 300 ¶ 84)). In the Order, this Court noted that this allegation "may" constitute use of another's "advertising idea", but declined to analyze the issue because that allegation was only part of a claim for False Advertising that had been dismissed. (Doc. 54 at 6–7).

Winder's labeling inserts have never been a trigger for coverage under the Policies though. In Georgia, "an 'advertising idea' is any idea or concept related to the promotion of a product to the public." *Transportation Ins. Co. v. Freedom Elecs., Inc.*, 264 F. Supp. 2d 1214, 1218 (N.D. Ga. 2003). Where a product merely

9

offers an "explanation," without attempting to "differentiate or promote," it does not use an "advertising idea." *Trailer Bridge, Inc. v. Illinois Nat. Ins. Co.*, 657 F.3d 1135, 1143 (11th Cir. 2011). None of the iterations of the Complaint even suggest that something about the appearance of the labels themselves, divorced from their content, was wrongfully taken by Winder.

Instead, every iteration of the Complaint alleges that Winder copied the list of ingredients and warnings on Concordia's labels, and that this duplicate content caused Drug Databases to assume that Winder's drug was linked to Concordia's as a generic equivalent. (Doc. 54 at 3, 8; Doc. 65 at 9–11). A list of ingredients and warnings is only a list of (supposed) facts, not an "idea or concept related to the promotion of a product to the public." *E.S.Y., Inc. v. Scottsdale Ins. Co.*, 139 F. Supp. 3d 1341, 1354 (S.D. Fla. 2015) ("A company's merely informational notice to the public is not an 'advertisement.'"); *Trailer Bridge*, 657 F.3d at 1143 (finding a news article containing quotations from an interview with the insured's CEO was not an advertisement because its purpose was simply informational). Therefore, the allegation that Winder copied these lists of ingredients and warnings simply does not allege "the use of another's advertising idea in your advertisement."

Further, even if the allegations regarding the labels did allege "use of another's advertising idea," those allegations would still fall squarely within the

Failure to Conform Exclusion. As set out above, the Complaints allege that Winder's use of the labels was wrong because it created the false impression that Winder's product was the generic equivalent of Concordia's. (Doc. 54 at 3, 8; Doc. 65 at 9–11). As with the other allegations in the various iterations of the Complaint, this falls squarely within the Failure to Conform Exclusion.

**V.    In the Alternative, the Insurers have not had a duty to defend Winder in the Underlying Lawsuit since the 2017 Motion to Dismiss Order or the 2018 Motion to Dismiss Order.**

While it is the Insurers' position that they have never owed a duty to defend the Underlying Lawsuit and that they are entitled to all defense costs, the Insurers note that, at a minimum, they are entitled to reimbursement of all defense costs that they have paid since the 2017 Motion to Dismiss Order, or, at the very latest, the 2018 Motion to Dismiss Order. (*See* Exhibit D, March 15, 2017 Motion to Dismiss Order in Underlying Lawsuit; Doc. 1-7, Ex. G to Compl., September 28, 2018 Motion to Dismiss Order in Underlying Lawsuit). Indeed, as noted in this Court's Order, any possible trigger in earlier versions of the Complaint relates to allegations that were dismissed, which would necessarily have been in one of the Motion to Dismiss Orders. (Doc. 54 at 9-10).

The majority of the allegations against Winder that were dismissed in the Underlying Lawsuit were dismissed in the 2017 Motion to Dismiss Order. This

order dismissed claims for false advertising under the Lanham Act, unfair competition under the Lanham Act, common law unfair competition, violations of the Georgia Uniform Unfair Trade and Deceptive Practices Act, and tortious interference with contract or business relationships. (*See* Ex. D). Many of these claims specifically involved the labeling allegations discussed above. (*See, e.g.*, *id.* at 8, 20, and 25). Therefore, even if the labelling allegations were a trigger for coverage—and, as set out above, they are not—the Insurers have had no duty to defend since at least the date of the 2017 Motion to Dismiss Order.

The 2018 Motion to Dismiss Order is the only other order that dismissed claims against Winder in the Underlying Lawsuit. While that order was less extensive than the 2017 Motion to Dismiss Order, it dismissed claims for unfair competition under the Lanham Act and common law unjust enrichment. (Doc. 1-7). Since the date of the 2018 Motion to Dismiss Order, there have been no substantive changes to the underlying allegations.[2]

Therefore, even if this Court declines to extend its Order to apply to all iterations of the Complaint, the Order clearly applies to at least all iterations of the underlying complaints after the Motion to Dismiss Orders. At a bare minimum,

---

[2] While the underlying claimants filed a Fourth Amended Complaint, this Court has correctly noted that this complaint "is materially similar to the TAC." (Doc. 54 at 3 n.1).

12

therefore, the Insurers are entitled to reimbursement for fees and costs incurred since March 15, 2017, or, at the latest, September 28, 2018.

### VI. Winder Has Been Unjustly Enriched by Having the Insurers Pay Millions of Dollars in Fees That They Do Not Owe.

Reimbursement is the only way to avoid manifest injustice in this matter. Without a reimbursement award, Winder will have been unjustly enriched for millions of dollars of defense costs that it was not entitled to, and will be further rewarded for its refusal to even discuss settlement of the Insurers' reimbursement claim. At the same time, the Insurers will be penalized millions of dollars for defending under a reservation of rights while pursuing a declaratory judgment action, as Georgia law encourages insurers to do, rather than denying the duty to defend outright.

Winder has incurred extravagant costs at the Insurers' expense in the Underlying Lawsuit. To date, the Insurers have incurred $2,701,734.64 in fees and costs on behalf of Winder in defense of the Underlying Lawsuit. (*See* Exhibit E, Affidavit of Harbinder Johal of VFI at ¶ 10; *see also* Exhibit F, Summary Charts of Fees and Costs Incurred by VFI). If the Court were not to award reimbursement, Winder would receive a windfall and be unjustly enriched by retaining these millions of dollars in benefits to which it was not entitled.

Further, a denial of reimbursement would reward Winder for its refusal to settle this matter, even after this Court urged it to do so. As set out above, the Insurers' have repeatedly tried to discuss settlement of this issue and have proposed mediation with Winder. (*See* Ex. A). However, Winder refused to engage in any such settlement discussions, insisting that it would not pay any amount of reimbursement. (*Id.*) Without a reimbursement award, Winder will be rewarded for this refusal to settle.

Finally, if the Insurers are unable to recoup the millions of dollars in fees that they paid for a lawsuit that was never covered, this penalizes the Insurers for following the recommended course of action of defending under a reservation of rights and filing a declaratory judgment action, instead of just denying coverage outright. Georgia courts have instructed that an insurer who is uncertain as to how to handle a claim under a policy should defend its insured under a reservation of rights and then seek a declaratory judgment. *Richmond v. Georgia Farm Bureau Mut. Ins. Co.*, 140 Ga. App. 215, 231 S.E.2d 245, 247 (1976) ("A proper and safe course of action for an insurer in this position is to enter upon a defense under a reservation of rights and then to proceed to seek a declaratory judgment in its favor."). This public policy requires that insurers who follow this course are not penalized for it. *Moore v. State Farm Mut. Auto. Ins. Co.*, 196 Ga. App. 755, 757,

14

397 S.E.2d 127, 129 (1990) (noting that the declaratory judgment procedure under *Richmond* evinces a public policy to avoid "penalizing" insurers and insureds).

Because VFI paid the fees and costs on behalf of Winder, they are presumptively deemed reasonable. *See, e.g.*, *Cincinatti Ins. Co. v. Grande Pointe, LLC*, 501 F. Supp. 2d 1145, 1172 (E.D. Tenn. 2007); *Am. Serv. Ins. Co. v. China Ocean Shipping Co. (Americas) Inc.*, 402 Ill.App.3d 513, 932 N.E.2d 8 (1st Dist. 2010). VFI is additionally entitled to prejudgment interest per annum starting from when each invoice was paid. *See, e.g., Allstate Ins. Co. v. Palterovich*, 653 F. Supp. 2d 1306, 1330 (S.D. Fla. 2009) ("Plaintiffs are due prejudgment interest for each payment they made to Defendants beginning on the date of each loss, or in other words, on the date that each payment occurred."); *Caterpillar, Inc. v. Century Indem. Co.*, 2011 WL 488935, *12 (Ill. Ct. App. 3rd Dist. February 1, 2011).

Georgia law provides that a party recovering money damages is entitled to prejudgment interest if the amount recovered is liquidated. *S.E.C. v. Price*, 108 F. Supp. 3d 1342, 1348 (N.D. Ga. 2010) ("Where a contract does not specify an interest rate, 'pre-judgment interest accrues from the date of demand at a rate of 7 percent per annum.'"). A debt is liquidated when it is certain how much is due and when it is due. *Id*. And prejudgment interest is awarded as a matter of law. *See Holloway v. State Farm Fire & Cas. Co.*, 245 Ga. App. 319, 322 (2000) ("An

award of prejudgment interest for liquidated damages is mandatory rather than discretionary and is awarded as a matter of law."). "Under Georgia law, if a sum is liquidated, pre-judgment interest accrues from the date of demand at a rate of 7 percent per annum." *Id.*; *see also Great Am. Ins. Co. v. Int'l Inc. Co.*, 753 F. Supp. 357, 364 (M.D. Ga. 1990); O.C.G.A. § 7–4–2 (2020).

Based on the Insurers' calculations, VFI has incurred a total of $480,919.56 in prejudgment interest to date at a rate of 7% per annum. (*See* Exs. E and F). Exhibit F provides a summary of the prejudgment interest incurred by VFI from each of the underlying complaints and the March 15, 2017 and September 28, 2018 Motion to Dismiss Orders in the Underlying Lawsuit. (*Id.*) The Insurers respectfully request an award of prejudgment interest at a rate of 7 percent per annum.

### VII. Conclusion

The Insurers are entitled to reimbursement. The Insurers never owed a duty to defend the Underlying Lawsuit—or, at a minimum, have not owed such a duty since the Motion to Dismiss Orders—and properly reserved their rights to recoup the substantial defense costs that they have paid. Without such an award of reimbursement, Winder will receive a massive windfall of fees to which it was

never entitled, and will further be rewarded for its refusal to resolve this issue through settlement.

This 23rd day of November, 2020.

                    Respectfully submitted,

                    */s/ Maxwell R. Jones*
                    Maxwell R. Jones
                    Georgia Bar No. 451289
                    Dentons US LLP
                    303 Peachtree St NE, Suite 5300
                    Atlanta, Georgia 30308
                    max.jones@dentons.com
                    T: (404)-527-4000

                    Kathryn M. Guinn
                    GA Bar No. 160785
                    Dentons US LLP
                    1400 Wewatta Street, Suite 700
                    Denver, CO 80202
                    katy.guinn@Dentons.com
                    T: (303) 634-4000

                    *Pro Hac Vice*:
                    Julie K. Linhart
                    Florida Bar No. 0571601
                    CNA Coverage Litigation Group
                    4631 Woodland Corporate Blvd.
                    Suite 315
                    Tampa, Florida 33614
                    Telephone: (813) 880-5165
                    Direct Line: (813) 880-5168
                    Facsimile: (312) 260-6859
                    Primary Email:
                    Julie.Linhart@cna.com;

Secondary Email:
donna.matesa@cna.com;
colliauLawOfficesTampa@cna.com

**Attorneys for Valley Forge Insurance Company and Continental Casualty Company**

## **CERTIFICATE OF TYPE LIMITATIONS AND COMPLIANCE**

I HEREBY CERTIFY that the foregoing was prepared using 14-point Times New Roman font and prepared in compliance with ND Ga L.R. 7.1.

*/s/ Maxwell R. Jones*
Maxwell R. Jones

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been filed with the Clerk of the Court using the CM/ECF System, which will send notice of electronic filing to all counsel of record on this 23rd day of November, 2020.

      */s/ Maxwell R. Jones*
      Maxwell R. Jones